**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JANE WINTER, ex rel. United States of America, *Plaintiff-Appellant*, v. GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., DBA Tri-City Regional Medical Center, a California corporation; ROLLINSNELSON LTC CORP., a California corporation; VICKI ROLLINS; BILL NELSON; S&W HEALTH MANAGEMENT SERVICES, INC., a California corporation; BERYL WEINER; PRODE PASCUAL, M.D.; RAFAELITO VICTORIA, M.D.; ARNOLD LING, M.D.; CYNTHIA MILLER-DOBALIAN, M.D.; EDGARDO BINOYA, M.D.; NAMIKO NERIO, M.D.; MANUEL SACAPANO, M.D., *Defendants-Appellees.* | No. 18-55020 D.C. No. 2:14-cv-08850-JFW-E OPINION |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted September 13, 2019
Pasadena, California

Filed March 23, 2020

Before:  Johnnie B. Rawlinson, John B. Owens,
and Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY[*]

### False Claims Act

The panel reversed the district court's dismissal for failure to state a claim and remanded in an action under the False Claims Act, alleging that defendants submitted, or caused to be submitted, Medicare claims falsely certifying that patients' inpatient hospitalizations were medically necessary.

Plaintiff alleged that the admissions were not medically necessary and were contraindicated by the patients' medical records and the hospital's own admissions criteria.  The district court held that "to prevail on an FCA claim, a plaintiff must show that a defendant knowingly made an objectively false representation," and so a statement that implicates a doctor's clinical judgment can never state a claim under the FCA because "subjective medical opinions . . . cannot be proven to be objectively false."

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that a plaintiff need not allege falsity beyond the requirements adopted by Congress in the FCA, which primarily punishes those who submit, conspire to submit, or aid in the submission of false or fraudulent claims. The panel stated that Congress imposed no requirement of objective falsity, and the panel had no authority to rewrite the statute to add such a requirement. The panel held that a doctor's clinical opinion must be judged under the same standard as any other representation. A doctor, like anyone else, can express an opinion that he knows to be false, or that he makes in reckless disregard of its truth or falsity. Agreeing with other circuits, the panel therefore held that a false certification of medical necessity can give rise to FCA liability. The panel also held that a false certification of medical necessity can be material because medical necessity is a statutory prerequisite to Medicare reimbursement.

---

## COUNSEL

Michael J. Khouri (argued), Andrew G. Goodman, and Jennifer W. Gatewood, Khouri Law Firm APC, Irvine, California, for Plaintiff-Appellant.

Thad A. Davis (argued), Gibson Dunn & Crutcher LLP, San Francisco, California; James L. Zelenay Jr., Gibson Dunn & Crutcher LLP, Los Angeles, California; for Defendants-Appellees Beryl Weiner and S&W Health Management Services, Inc.

Matthew Umhofer (argued) and Elizabeth J. Lee, Spertus Landes & Umhofer LLP, Los Angeles, California, for Defendants-Appellees RollinsNelson LTC Corp., Vicki Rollins, and Bill Nelson.

Raymond J. McMahon, Doyle Schafer McMahon, Irvine, California, for Defendants-Appellees Arnold Ling, M.D.; Cynthia Miller-Dobalian, M.D.; and Edgardo Binoya, M.D.

Michael D. Gonzalez and Andrea D. Vazquez, Law Offices of Michael D. Gonzalez, Glendale, California; Kenneth R. Pedroza and Matthew S. Levinson, Cole Pedroza LLP, for Defendant-Appellee Prode Pascual, M.D.

Craig B. Garner, Garner Health Law Corporation, Marina Del Rey, California, for Defendant-Appellee Rafaelito Victoria, M.D.

No appearance by Defendants-Appellees Gardens Regional Hospital and Medical Center, Inc.; Namiko Nerio, M.D.; and Manuel Sacapano, M.D.

Benjamin M. Shultz (argued), Michael S. Raab, and Charles W. Scarborough, Appellate Staff; Nicola T. Hanna, United States Attorney; Civil Division, United States Department of Justice, Washington, D.C.; for Amicus Curiae United States of America.

James F. Segroves, Kelly H. Hibbert, and Nancy B. Halstead, Reed Smith LLP, Washington, D.C.; Mark E. Reagan, Hooper Lundy & Bookman PC, San Francisco, California; for Amici Curiae American Health Care Association, National Center for Assisted Living, and California Association of Health Facilities.

**OPINION**

BENNETT, Circuit Judge:

Appellant-Relator Jane Winter ("Winter"), the former Director of Care Management at Gardens Regional Hospital ("Gardens Regional"), brought this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33.  Winter alleges Defendants[1] submitted, or caused to be submitted, Medicare claims falsely certifying that patients' inpatient hospitalizations were medically necessary.  Winter alleges that the admissions were not medically necessary and were contraindicated by the patients' medical records and the hospital's own admissions criteria.  The district court dismissed Winter's second amended complaint ("the complaint") for failure to state a claim.  The district court held that "to prevail on an FCA claim, a plaintiff must show that a defendant knowingly made an objectively false representation," so a statement that implicates a doctor's clinical judgment can never state a claim under the FCA because "subjective medical opinions . . . cannot be proven to be objectively false."

We have jurisdiction under 28 U.S.C. § 1291.  We hold that a plaintiff need not allege falsity beyond the requirements adopted by Congress in the FCA, which primarily punishes those who submit, conspire to submit, or aid in the submission of false or fraudulent claims.  Congress imposed no requirement of proving "objective falsity," and we have no authority to rewrite the statute to add such a

---

[1] The Defendants include Gardens Regional Hospital, the hospital management company (S&W Health Management Services) and its owners (RollinsNelson, Rollins, Nelson, and Weiner), and individual physicians who diagnosed and admitted patients.

requirement.  A doctor's clinical opinion must be judged under the same standard as any other representation.  A doctor, like anyone else, can express an opinion that he knows to be false, or that he makes in reckless disregard of its truth or falsity. *See* 31 U.S.C. § 3729(b)(1).  We therefore hold that a false certification of medical necessity can give rise to FCA liability.[2]  We also hold that a false certification of medical necessity can be material because medical necessity is a statutory prerequisite to Medicare reimbursement.  Accordingly, we reverse and remand.

## BACKGROUND

### A.  The "Medical Necessity" Requirement

The Medicare program provides basic health insurance for individuals who are 65 or older, disabled, or have end-stage renal disease.  42 U.S.C. § 1395c.  "[N]o payment may be made . . . for any expenses incurred for items or services . . . [that] are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member[.]"   42 U.S.C. § 1395y(a)(1)(A).   Medicare reimburses providers for inpatient hospitalization only if "a physician certifies that such services are required to be given on an inpatient basis for such individual's medical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purpose[.]"  42 U.S.C. § 1395f(a)(3).

The Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS"), administers the

---

[2] The FCA covers claims that are "false or fraudulent." 31 U.S.C. § 3729(a)(1).  For convenience, we will generally use "false" to mean "false or fraudulent."

Medicare program and issues guidance governing reimbursement.  CMS defines a "reasonable and necessary" service as one that "meets, but does not exceed, the patient's medical need," and is furnished "in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition . . . in a setting appropriate to the patient's medical needs and condition[.]" CMS, Medicare Program Integrity Manual § 13.5.4 (2019). The Medicare program tells patients that "medically necessary" means health care services that are "needed to diagnose or treat an illness, injury, condition, disease, or its symptoms and that meet accepted standards of medicine." CMS, Medicare & You 2020: The Official U.S. Government Medicare Handbook 114 (2019).

Admitting a patient to the hospital for inpatient—as opposed to outpatient—treatment requires a formal admission order from a doctor "who is knowledgeable about the patient's hospital course, medical plan of care, and current condition."    42 C.F.R. § 412.3(b).    Inpatient admission "is generally appropriate for payment under Medicare Part A when the admitting physician expects the patient to require hospital care that crosses two midnights," but inpatient admission can also be appropriate under other circumstances if "supported by the medical record."  *Id.* § 412.3(d)(1), (3).

The Medicare program trusts doctors to use their clinical judgment based on "complex medical factors," but does not give them unfettered discretion to decide whether inpatient admission is medically necessary: "The factors that lead to a particular clinical expectation *must be documented in the medical record* in order to be granted consideration." *Id.* § 412.3(d)(1)(i) (emphasis added). And the regulations consider medical necessity a question of fact: "No

presumptive weight shall be assigned to the physician's order under § 412.3 or the physician's certification . . . in determining the medical necessity of inpatient hospital services . . . . A physician's order or certification will be evaluated in the context of the evidence in the medical record." *Id.* § 412.46(b).

## B.  The False Claims Act

The FCA imposes significant civil liability on any person who, *inter alia*, (A) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," (B) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or (C) "conspires to commit a violation of subparagraph (A), [or] (B)[.]"  31 U.S.C. § 3729(a)(1). The Act allows private plaintiffs to enforce its provisions by bringing a *qui tam* suit on behalf of the United States.  *Id.* § 3730(b).

A plaintiff must allege: "(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing, (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017). Winter's allegations fall under a "false certification" theory of FCA liability.[3]  *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016). Because medical necessity is a condition of payment, every Medicare claim includes an express or implied certification that treatment was medically necessary.  Claims for unnecessary treatment are false claims.  Defendants act with the required scienter if they know the treatment was not

---

[3] The complaint alleges both express and implied false certification.

medically necessary, or act in deliberate ignorance or reckless disregard of whether the treatment was medically necessary. *See* 31 U.S.C. § 3729(b)(1).

### C.  The Allegations in Winter's Complaint[4]

Winter, a registered nurse, became the Director of Care Management and Emergency Room at Gardens Regional in August 2014, and came to the job with thirteen years of experience as a director of case management at hospitals in Southern California and Utah.

Winter reviewed hospital admissions using the admissions criteria adopted by Gardens Regional—the InterQual Level of Care Criteria 2014 ("the InterQual criteria"). The InterQual criteria, promulgated by McKesson Health Solutions LLC and updated annually, "are reviewed and validated by a national panel of clinicians and medical experts," and represent "a synthesis of evidence-based standards of care, current practices, and consensus from licensed specialists and/or primary care physicians." Medicare uses the criteria to evaluate claims for payment. And, as the criteria require a secondary review of all care decisions, Winter's job included reviewing Garden Regional patients' medical records and applying the criteria to evaluate the medical necessity of hospital admissions.

In mid-July 2014, Defendant RollinsNelson—which owned and operated nursing facilities in the Los Angeles area—acquired a 50% ownership interest in Defendant S&W, the management company that oversaw operations at

---

[4] All facts are taken from Winter's second amended complaint. "We accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

Gardens Regional.   RollinsNelson then began jointly managing the hospital with S&W.  When Winter started work, she noticed that the emergency room saw an unusually high number of patients transported from RollinsNelson nursing homes, including from a facility sixty miles away. The RollinsNelson patients were not just treated on an outpatient basis or held overnight for observation—most were admitted for inpatient hospitalization.  In August 2014, 83.5% of the patients transported from RollinsNelson nursing homes were admitted to Gardens Regional for inpatient treatment—an unusually high admissions rate based on Winter's experience and judgment.

Winter was concerned about this pattern and scrutinized Gardens Regional's admissions statistics, comparing July and August 2014 to prior months.  She realized that the spike in admissions from RollinsNelson nursing homes corresponded with RollinsNelson's acquisition of S&W. Not only did the number of admissions increase, the number of Medicare beneficiaries admitted rose as well.  The number of Medicare beneficiaries admitted in August 2014, for example, surpassed that of any month before RollinsNelson began managing the hospital.   Winter alleges that RollinsNelson and S&W—including the individual owners of both entities—"exerted direct pressure on physicians to admit patients to [Gardens Regional] and cause false claims to be submitted based on false certifications of medical necessity."

Winter's complaint details sixty-five separate patient admissions—identified by the admitting physician, patient's initials, chief complaint, diagnosis, length of admission, the Medicare billing code, and the amount billed to Medicare— that Winter alleges did not meet Gardens Regional's admissions criteria and were unsupported by the patients'

medical records.  She alleges that none of the admissions were medically necessary.  Winter observed several trends: i) admitting patients for urinary tract infections ("UTIs") ordinarily treated on an outpatient basis with oral antibiotics; ii) admitting patients for septicemia with no evidence of sepsis in their records; and iii) admitting patients for pneumonia or bronchitis with no evidence of such diseases in their medical records.  Winter estimates that in less than two months—between July 14 and September 9, 2014— Gardens Regional submitted $1,287,701.62 in false claims to the Medicare program.

Winter repeatedly tried to bring her concerns to the attention of hospital management, with no success.  In her first week, she reported the high number of unnecessary admissions to the hospital's Chief Operating Officer.  After receiving no response, she reached out to the hospital's Chief Executive Officer.  When she still received no response, she tried confronting Dr. Sacapano directly.  He told her: "You know who I'm getting pressure from."  Winter understood Dr. Sacapano to mean the hospital management.

At the beginning of September 2014, Defendants Rollins, Nelson and Weiner—the owners of S&W and RollinsNelson—"called an urgent impromptu meeting," and "instructed case management not to question the admissions to [Gardens Regional.]"  When Winter tried to speak up, Rollins cut her off, using profanity.  Shortly after the meeting, Rollins instructed one of the hospital's case managers to "coach" physicians, explaining in an email that "[t]hese Mds will most likely increase their admits because their documentation will be 'assisted.'"

In November 2014, Gardens Regional fired Winter and replaced her with an employee who had never questioned

any inpatient admissions.  Winter filed her complaint a week later.

## D.  Procedural History

In November 2017, after the Government had declined to intervene and Winter had filed the second amended complaint, Defendants RollinsNelson, Rollins, Nelson, S&W, Weiner and Dr. Pascual filed motions to dismiss the complaint for failure to state a claim.[5]  The district court granted the motions, dismissing Winter's three FCA claims against all Defendants for the same reasons: (1) because a determination of "medical necessity" is a "subjective medical opinion[] that cannot be proven to be objectively false," and (2) because the alleged false statements, which the district court characterized as the "failure to meet InterQual criteria," were not material.[6]

### STANDARD OF REVIEW

We review the grant of a motion to dismiss de novo. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008).  "In reviewing the dismissal of a complaint, we inquire whether the complaint's factual

---

[5] At oral argument, Winter's counsel acknowledged that Dr. Sacapano and Dr. Nerio had not yet been served with the second amended complaint when the district court, in granting the moving Defendants' motions to dismiss, sua sponte dismissed the complaint against them as well.  Oral Argument at 10:58, *Winter v. Gardens Regional Hosp., et al.*, No. 18-55020 (9th Cir. Sept. 13, 2019), https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000016 196.

[6] The district court did not dismiss Winter's retaliation claim against Gardens Regional.  Winter voluntarily dismissed that claim without prejudice to allow for an appeal.

allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). As with all fraud allegations, a plaintiff must plead FCA claims "with particularity" under Federal Rule of Civil Procedure 9(b). *Id.*

## DISCUSSION

### A. Winter properly alleges false or fraudulent statements

We interpret the FCA broadly, in keeping with the Congress's intention "to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). For that reason, the Supreme Court "has consistently refused to accept a rigid, restrictive reading" of the FCA, *id.*, and has cautioned courts against "adopting a circumscribed view of what it means for a claim to be false or fraudulent," *Escobar*, 136 S. Ct. at 2002 (quoting *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1270 (D.C. Cir. 2010)).

"[W]e start, as always, with the language of the statute." *Id.* at 1999 (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 668 (2008)). The plain language of the FCA imposes liability for presenting, or causing to be presented, a "false or fraudulent claim for payment or approval," making "a false record or statement material to a false or fraudulent claim," or conspiring to do either. 31 U.S.C. § 3729(1)(A)–(C). Because Congress did not define "false or fraudulent," we presume it incorporated the common-law definitions, including the rule that a statement need not contain an "express falsehood" to be actionable. *Escobar*, 136 S. Ct. at 1999 ("[I]t is a settled principle of

interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." (quoting *Sekhar v. United States*, 570 U.S. 729, 732 (2013))). And, in at least one respect, Congress intended for the FCA to be broader than the common law: Under the FCA, "'knowingly' . . . require[s] no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B).

"[O]pinions are not, and have never been, completely insulated from scrutiny." *United States v. Paulus*, 894 F.3d 267, 275–76 (6th Cir. 2018) (upholding conviction for Medicare fraud where physician justified unnecessary procedures by exaggerating his interpretation of medical tests); *see also Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1049 (9th Cir. 2012) (holding that false estimates "can be a source of liability under the FCA"). Under the common law, a subjective opinion is fraudulent if it implies the existence of facts that do not exist, or if it is not honestly held. Restatement (Second) of Torts § 525; *id.* § 539. As the Supreme Court recognized, "the expression of an opinion may carry with it an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 191 (2015) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 109, at 760 (5th ed. 1984)).

Defendants and amici curiae American Health Care Association, National Center for Assisted Living, and California Association of Health Facilities urge this court to hold the FCA requires a plaintiff to plead an "objective falsehood." But "[n]othing in the text of the False Claims Act supports [Defendants'] proposed restriction." *Escobar*, 136 S. Ct. at 2001. Under the plain language of the statute,

the FCA imposes liability for all "false or fraudulent claims"—it does not distinguish between "objective" and "subjective" falsity or carve out an exception for clinical judgments and opinions.

Defendants are correct that if clinical judgments can be fraudulent under the FCA, doctors will be exposed to liability they would not face under Defendants' view of the law.  "But policy arguments cannot supersede the clear statutory text." *Id.* at 2002.  Our role is "to apply, not amend, the work of the People's representatives." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017).  And the Supreme Court has already addressed Defendants' concern: "Instead of adopting a circumscribed view of what it means for a claim to be false or fraudulent, concerns about fair notice and open-ended liability can be effectively addressed through strict enforcement of the Act's materiality and scienter requirements." *Escobar*, 136 S. Ct. at 2002 (quotation marks, alterations, and citation omitted).

We have similarly explained that the FCA requires "the 'knowing presentation of what is known to be false'" and that "[t]he phrase 'known to be false'. . . does not mean 'scientifically untrue'; it means 'a lie.'  The Act is concerned with ferreting out 'wrongdoing,' not scientific errors." *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992) (citations omitted), *overruled on other grounds by United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015) (en banc).  This does not mean, as the district court understood it, that only "objectively false" statements can give rise to FCA liability.  It means that falsity is a necessary, but not sufficient, requirement for FCA liability—after alleging a false statement, a plaintiff must still establish scienter. *Id.* ("What is false as a matter of science is not, by that very fact, wrong as a matter of

morals.").  To be clear, a "scientifically untrue" statement is "false"—even if it may not be actionable because it was not made with the requisite intent.  And an opinion with no basis in fact can be fraudulent if expressed with scienter.

We are not alone in concluding that a false certification of medical necessity can give rise to FCA liability.  In *United States ex rel. Riley v. St. Luke's Episcopal Hospital*, the Fifth Circuit recognized that "claims for medically unnecessary treatment are actionable under the FCA."  355 F.3d 370, 376 (5th Cir. 2004).  The plaintiff alleged the defendants filed false claims "for services that were . . . medically unnecessary," *id.* at 373, and the Fifth Circuit reversed the district court's dismissal for failure to state a claim, explaining that because the complaint alleged that the defendants ordered medical services "knowing they were unnecessary," the statements were lies, not simply errors.  *Id.* at 376.

Likewise, in *United States ex rel. Polukoff v. St. Mark's Hospital*, the Tenth Circuit recognized "[i]t is possible for a medical judgment to be 'false or fraudulent' as proscribed by the FCA[.]"  895 F.3d 730, 742 (10th Cir. 2018).  The court looked to CMS's definition of "medically necessary," and held, "a doctor's certification to the government that a procedure is 'reasonable and necessary' is 'false' under the FCA if the procedure was not reasonable and necessary under the government's definition of the phrase."  *Id.* at 743.  The Third Circuit reached a similar conclusion in *United States ex rel. Druding v. Care Alternatives*, No. 18-3298, 2020 WL 1038083 (3d Cir. Mar. 4, 2020), rejecting the "bright-line rule that a doctor's clinical judgment cannot be 'false.'"  *Id.* at *7 (holding that, in the context of certifying terminal illness, "for purposes of FCA falsity, a claim may be 'false' under a theory of legal falsity, where it fails to

comply with statutory and regulatory requirements," and that "a physician's judgment may be scrutinized and considered 'false,'" *id.* at \*9).

The Eleventh Circuit's recent decision in *United States v. AseraCare, Inc.*, 938 F.3d 1278 (11th Cir. 2019), is not directly to the contrary.  In *AseraCare*, the Eleventh Circuit held that "a clinical judgment of terminal illness warranting hospice benefits under Medicare cannot be deemed false, for purposes of the False Claims Act, when there is *only* a reasonable disagreement between medical experts as to the accuracy of that conclusion, *with no other evidence* to prove the falsity of the assessment." *Id.* at 1281 (emphases added). We recognize that the court also said "a claim that certifies that a patient is terminally ill . . . cannot be 'false'—and thus cannot trigger FCA liability—if the underlying clinical judgment does not reflect an objective falsehood." *Id.* at 1296–97.  But we conclude that our decision today does not conflict with *AseraCare* for two reasons.

First, the Eleventh Circuit was not asked whether a medical opinion could ever be false or fraudulent, but whether a reasonable disagreement between physicians, *without more*, was sufficient to prove falsity at summary judgment. *Id.* at 1297–98.  Notwithstanding the Eleventh Circuit's language about "objective falsehoods," the court clearly did not consider all subjective statements—including medical opinions—to be incapable of falsity, and identified circumstances in which a medical opinion would be false.[7]

---

[7] For example, "if the [doctor] does not actually hold that opinion" or simply "rubber-stamp[s] whatever file was put in front of him," if the opinion is "based on information that the physician knew, or had reason to know, was incorrect," or if "no reasonable physician" would agree

Second, the Eleventh Circuit recognized that its "objective falsehood" requirement did not necessarily apply to a physician's certification of medical necessity—explicitly distinguishing *Polukoff*. *Id.* at 1300 n.15. Rather, the court explained that the "hospice-benefit provision at issue" purposefully defers to "whether a physician has based a recommendation for hospice treatment on a genuinely-held clinical opinion" whether a patient was terminally ill.[8] *Id.*; *see also id.* at 1295. In fact, after holding that physicians' hospice-eligibility determinations are entitled to deference, the Eleventh Circuit explained that the less-deferential medical necessity requirement remained an important safeguard: "The Government's argument that our reading of the eligibility framework would 'tie CMS's hands' and 'require improper reimbursements' is contrary to the plain design of the law" because "CMS is statutorily prohibited from reimbursing providers for services 'which are not reasonable and necessary[.]'" *Id.* at 1295 (alteration and citation omitted). Thus, for the same reason the Eleventh Circuit recognized *AseraCare* did not conflict with *Polukoff*, we believe our decision does not conflict with *AseraCare*. And to the extent that *AseraCare* can be read to graft any type of "objective falsity" requirement onto the FCA, we

---

with the doctor's opinion, "based on the evidence[.]" *AseraCare*, 938 F.3d at 1302.

[8] A patient must have less than six months to live to be eligible for hospice care. *AseraCare*, 938 F.3d at 1282. But, as the Eleventh Circuit explained, CMS "repeatedly emphasized that '[p]redicting life expectancy is not an exact science,' [and that] 'certifying physicians have the best clinical experience, competence and judgment to make the determination that an individual is terminally ill.'" *Id.* at 1295 (quoting 75 Fed. Reg. 70372, 70448 (Nov. 17, 2010) and 78 Fed. Reg. 48234, 48247 (Aug. 7, 2013)). By contrast, a certification of medical necessity is not entitled to deference. 42 C.F.R. § 412.46(b).

reject that proposition. *See Druding*, 2020 WL 1038083, at *8.

In sum, we hold that the FCA does not require a plaintiff to plead an "objective falsehood." A physician's certification that inpatient hospitalization was "medically necessary" can be false or fraudulent for the same reasons any opinion can be false or fraudulent. These reasons include if the opinion is not honestly held, or if it implies the existence of facts—namely, that inpatient hospitalization is needed to diagnose or treat a medical condition, in accordance with accepted standards of medical practice— that do not exist. *See Polukoff*, 895 F.3d at 742–43.

We now turn to Winter's complaint. We accept all facts alleged as true and draw all inferences in Winter's favor, and conclude that her complaint plausibly alleges false certifications of medical necessity.

First, the complaint "alleges a 'scheme' connoting knowing misconduct." *Riley*, 355 F.3d at 376. RollinsNelson and S&W—and their individual owners Rollins, Nelson and Weiner—had a motive to falsify Medicare claims and pressure doctors to increase admissions. Gardens Regional relied on Medicare for a "significant portion" of its revenue, and the spike in admissions corresponded with an increased number of Medicare beneficiaries in its care. Moreover, the increased admissions of RollinsNelson patients began when RollinsNelson started managing Gardens Regional.

Second, not only does Winter identify suspect trends in inpatient admissions—for example, hospitalizing patients for UTIs—she also alleges statistics showing an overall increase in hospitalizations once RollinsNelson started managing the hospital. For example, the daily occupancy

rate jumped by almost 10%, the number of Medicare beneficiaries became the highest it had ever been by a significant margin, and the admissions rate from RollinsNelson nursing homes was over 80%. Plus, the large number of admissions that did not meet the criteria, and the fact that the vast majority of admissions came from a single doctor—Dr. Pascual, who had contractually agreed to use the InterQual criteria—decreases the likelihood that any given admission was an outlier.

Third, Winter's detailed allegations as to each Medicare claim support an inference of falsity. This is not a complaint that "identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement[.]" *Cafasso,* 637 F.3d at 1057. The complaint identifies sixty-five allegedly false claims in great detail, listing the date of admission, the admitting physician, the patient's chief complaint and diagnosis, and the amount billed to Medicare. The complaint alleges that each admission failed to satisfy the hospital's own admissions criteria—the InterQual criteria that Gardens Regional and Dr. Pascual had contractually agreed to use and that Winter's job as Director of Care Management required her to apply. And, as the district court recognized, the InterQual criteria represent the "consensus of medical professionals' opinions," so a failure to satisfy the criteria also means that the admission went against the medical consensus.

Finally, we note that many of the allegations supporting an inference of scienter also support an inference of falsity. *Cf. AseraCare*, 938 F.3d at 1304–05 (remanding for district court to consider evidence related to scienter in determining falsity on summary judgment). For example, when confronted, Dr. Sacapano corroborated Winter's suspicions, telling her that hospital management pressured him into

recommending patients for medically unnecessary inpatient admission.  And following Winter's numerous attempts to bring her concerns to the attention of hospital management, Defendants Rollins, Nelson, and Weiner held a meeting where they instructed Winter and other staff not to question the admissions.

Defendants argue that "Winter has alleged nothing more than her competing opinion with the treating physicians who actually saw the patients at issue."  The district court similarly dismissed the complaint because Winter's "contention that the medical provider's certifications were false is based on her own after-the-fact review of [Gardens Regional's] admission records."  To begin with, an opinion can establish falsity.  *See Paulus*, 894 F.3d at 270, 277 (affirming doctor's conviction for healthcare fraud by performing medically unnecessary procedures and holding that experts' "opinions, having been accepted into evidence, are sufficient to carry the government's burden of proof"); *cf. AseraCare*, 938 F.3d at 1300 (distinguishing *Paulus* because in *AseraCare* "the Government's expert witness declined to conclude that [the clinical judgments of] AseraCare's physicians . . . were unreasonable or wrong"). Winter alleges more than just a reasonable difference of opinion.  In addition to the allegations discussed above, she alleges that a number of the hospital admissions were for diagnoses that had been disproven by laboratory tests, and that several admissions were for psychiatric treatment, even though Gardens Regional was not a psychiatric hospital— and one of those patients never even saw a psychiatrist. Even if we were to discount Winter's evaluation of the medical records, as the district court did, the other facts she alleges would be sufficient to make her allegations of fraud plausible.

But more importantly, assessing medical necessity based on an "after-the-fact review" of patients' medical records *was Winter's job*.  At the motion to dismiss stage, her assessment is "entitled to the presumption of truth[.]"  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable.  The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'"  *Id.* at 1216–17 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).  Winter's complaint satisfies that standard.[9]

## B. Winter properly alleges material false or fraudulent statements

The district court also held that Winter failed to allege any material false statements.  We disagree.

"[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  "Under any understanding of the concept, materiality 'looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'"  *Escobar*, 136 S. Ct. at 2002 (quoting 26 Samuel Williston & Richard A. Lord,

---

[9] FCA claims must also be pleaded with particularity under Federal Rule of Civil Procedure 9(b).  *Cafasso*, 637 F.3d at 1054.  While a plaintiff need not "allege 'all facts supporting each and every instance' of billing submitted," she must "provide enough detail 'to give [defendants] notice of the particular misconduct which is alleged to constitute the fraud charged so that [they] can defend against the charge and not just deny that [they have] done anything wrong.'"  *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (quoting *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051–52 (9th Cir. 2001)).  Winter's detailed allegations clearly suffice to put Defendants on notice of their alleged false statements.

Williston on Contracts § 69:12 (4th ed. 2003)) (alteration omitted).   No "single fact or occurrence" determines materiality—"the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive."   *Id.* at 2001, 2003 (citation omitted).   For a false statement to be material, a plaintiff must plausibly allege that the statutory violations are "so central" to the claims that the government "would not have paid these claims had it known of these violations." *Id.* at 2004; *see also id.* at 2003 ("[P]roof of materiality can include . . . evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement.").

The district court analyzed whether failure to meet the InterQual criteria was material and concluded that it was not because "[t]here is no mention of the InterQual criteria in any of the relevant statutes or regulations."   This misreads the complaint.   Winter does not allege that failure to satisfy the InterQual criteria made Defendants' Medicare claims per se false—although, as discussed above, she claims that the InterQual criteria support her allegations because they reflect a medical consensus.   Rather, she alleges that "[Defendants'] claims for payment . . . were false in that the services claimed for (inpatient hospital admissions) were not medically necessary and economical," and that Defendants submitted "false certifications of . . . medical necessity."

We conclude that a false certification of medical necessity can be material.   The medical necessity requirement is not an "insignificant regulatory or contractual violation[.]"   *Escobar*, 136 S. Ct. at 2004.   Congress *prohibited* payment for treatment "not reasonable and necessary for the diagnosis or treatment of illness or injury

or to improve the functioning of a malformed body member[.]"  42 U.S.C. § 1395y(a)(1)(A).  And Medicare pays for inpatient hospitalization "*only if* . . . such services are required to be given on an inpatient basis for such individual's medical treatment[.]"   *Id.*  § 1395f(a)(3) (emphasis added).  In fact, Medicare regulations require all doctors to sign an acknowledgment that states,

> Medicare payment to hospitals is based in part on each patient's principal and secondary diagnoses and the major procedures performed on the patient, as attested to by the patient's attending physician by virtue of his or her signature in the medical record.  Anyone who misrepresents, falsifies, or conceals essential information required for payment of Federal funds, may be subject to fine, imprisonment, or civil penalty under applicable Federal laws.

42 C.F.R. § 412.46(a)(2).  In addition to highlighting the above Medicare statutes and regulations, Winter's complaint alleges that the government "would not" have "paid" Defendants' false claims "if the true facts were known."  In sum, Winter alleges that Defendants' false certification of the medical necessity requirement is "so central" to the Medicare program that the government "would not have paid these claims had it known" that the inpatient hospitalizations were, in fact, unnecessary.  *Escobar*, 136 S. Ct. at 2004. Thus, Winter has "sufficiently ple[d] materiality at this stage of the case."  *Campie*, 862 F.3d at 907.

## C.  Scienter

Defendants urge us to determine whether Winter adequately alleged scienter.  The district court did not reach this issue but expressed doubt that Winter had.  Although we may consider alternate grounds for upholding the district court's decision, *see Islamic Republic of Iran v. Boeing Co.*, 771 F.2d 1279, 1288 (9th Cir. 1985), we decline to do so here.

We remind the district court, however, that under Rule 9(b), scienter need not be pleaded with particularity, but may be alleged generally.  Fed. R. Civ. P. 9(b).  A complaint needs only to allege facts supporting a plausible inference of scienter.  *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997 (9th Cir. 2011).  And unlike in common law fraud claims, a plaintiff need not prove a "specific intent to defraud" under the FCA—the Act imposes liability on any person acting "knowingly," which includes acting with "actual knowledge," as well as acting "in deliberate ignorance," or "in reckless disregard of the truth or falsity of the information[.]" 31 U.S.C. § 3729(b)(1).  As the Supreme Court noted in another Medicare case, "[p]rotection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law[.]" *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 63 (1984).

## CONCLUSION

We hold that a plaintiff need not plead an "objective falsehood" to state a claim under the FCA, and that a false certification of medical necessity can be material. Accordingly, we reverse the district court's dismissal of Winter's complaint and remand for further proceedings consistent with this opinion.